Thank you. Good afternoon, Your Honors, and may it please the Court, I'm Mark Ebert, and I represent Mr. Briggs. This is a case where an African-American man accused of a cross-racial sexual assault was tried by an Oakland jury without a single African-American juror because 100 percent of the African-Americans in the veneer were peremptorily struck by the prosecutor. I thought one was excused for cause. I'm sorry? I thought one was excused for cause. Yeah, excuse me. I was not counting that because that's not relevant to the problem. Okay. So he didn't strike all of them with peremptory challenges? All that were eligible to serve that were in the veneer were struck for cause. Okay. That's a very unusual situation, and the fact that it is before the Court is due to not one, but five different violations of clearly established Supreme Court law. First, the district court found the State trial court never reached Step 3 of the Batson analysis, which is deciding whether the justifications put forward by the prosecutor are real or pretextual. The State court, though, State Court of Appeals, though, seemed to say otherwise. And that seemed to be a pretty fair reading of what happened. I mean, she didn't let anybody argue. It's true. But her ultimate conclusion was that this was the real reason. Well, what I, what I, how I read that and how the district court read that is that the trial court didn't reach the third prong of the Batson analysis. It simply accepted at face value the stated justifications of the prosecutor and never went beyond that. But what we're reviewing, though, is not directly the State trial court. Aren't we reviewing the State appellate division's decisions? Yes. So it's, it's that that we should be looking at to determine whether under the AEDPA standard, whether its analysis of this issue is unreasonable. So if you would turn to that. Sure. Because as I read it, that what they're saying is, look, the trial court ultimately was entitled to believe that the reason for striking Richardson was the statement about teenagers being susceptible to being coached and that McCutcheon was struck because saying that in a rape-type case, they'd expect more from the prosecution. Well, obviously, number one, I, as I just stated, I disagree with that reading of what the trial court did. I think he simply accepted it at face value. No, you disagree with it. But is the appellate court's decision accepting that unreasonable as well as wrong? It's wrong and unreasonable, because as the district court found, the court of appeal didn't reach the third prong of the Batson step either, because, and I'm going to quote from this Court's decision in Green v. Lamarck, quote, "'The California court of appeals analysis did not remedy the trial court's error. The majority simply found the prosecutor had offered race-neutral reasons, cited and discussed several cases deferring to the trial court's evaluation of witnesses, and stopped there. It failed to reach step three in the Batson analysis by merely reiterating the prosecutor's stated reasons and then finding that they were race-neutral. Without analyzing the other evidence in the record to determine whether those reasons were in fact the prosecutor's genuine reasons, the California court of appeal made exactly the same mistake which the U.S. Supreme Court criticized the California courts for in Johnson v. California.'" The point is that that's exactly what the court did here. It didn't make an independent analysis of the pretextualness. Let me finish my sentence. I didn't make an independent analysis of the pretextualness of the prosecutor's stated reasons. All it said was that there was substantial evidence to support what the trial court did. And what the trial court did was not to make that analysis. Well, I guess the problem I have with your summary conclusion is the California court of appeal wrote an opinion in which they recite their own review of the record, and then they conclude with regard to each of the jurors that the trial court did not act in an arbitrary fashion in accepting those proffered reasons as legitimate. And then I guess the second part of my question is, if the court denies the Batson challenge after relying on those same reasons, isn't that inherently a credibility determination that the court believes the veracity of the reasons? Because otherwise the court would grant the challenge and order a new trial. Well, actually, I don't believe that, Your Honor, because what the trial court said repeatedly, both at the time of the Batson motion and again later at the time of the new trial motion, was I accept and I have to accept the prosecutor's reasons. In other words, he never went behind those reasons. He refused to let the defense lawyer make his argument based on juror analysis. He said, I'm not going to consider that, which is a violation of Batson. Which at the time was correct under California law, was it not? Batson, which Judge Graber is familiar with, I believe, since she wrote it, and I was actually the lawyer on that case, decided that Batson, excuse me, not Batson, Boyd, excuse me, said that the decision in Boyd did not change the law, that in other words, you have to conduct comparative juror analysis. So it doesn't matter. Alito, wait a minute. In Boyd, it was also before that was made clear or at least recognized by this court. But there was no change in the law. I'm not sure you're answering my question. I thought, and we've got a number of Batson cases, so I hope I'm not confusing the facts here. I thought that at the time this case went to trial, the state of the law in California was that the trial court could not conduct a comparative analysis. Yes. And that was also the state of the law, the California law in Boyd. And Boyd says that that was unconstitutional. That's right. But what that gets you, that gets you where the district court got, which is to say that if the state court failed to perform the required three-step analysis, and I think it's fairly clear, to me at least, that the state court did not perform those three steps and did not specifically perform that, all that gets you is a different standard of review for us. But then you still have to convince us that there's something wrong with the state court listening to, not stopping at the prima facie case, but saying, I want to hear from the lips of the prosecutor, why did you, you know, strike these people? The prosecutor said for reasons one, two, and three. And the state court said, I believe you. What more is there? Actually, the state court said, I have to accept what the prosecutor's reasoning is. And that's the standard reasoning. No, the state court's, well, we have different readings of the transcript, because, I mean, I took it to be, I need to hear these reasons from the prosecutor's reason, and it is a valid reason. And so I don't think that the trial court was under any illusion that it had to deny the motions, otherwise, they wouldn't have bothered to ask for the explanation. So I guess I just read the transcript differently. Perhaps, and I guess in addition to what we disagree on, Your Honor, I think the one thing that is clear is that under Boyd and Batson, both of the district, excuse me, both the trial court and the California Court of Appeal were required to go on to consider comparative juror analysis, which is in the ERs, and to consider the statistical analysis, which says that 100 percent of the African-American jurors who are eligible to serve were kicked off the jury. The trial court refused twice to do comparative juror analysis and said, I'm not going to consider those people who were struck, those people who weren't struck, I'm not going to compare them. And the California Court of Appeals said, well, we looked at it, but what this really is is one of those usual cases where that's largely beside the point and that it proves little, which is also a violation of Batson, Boyd, and Millerell. So I understand what you're saying, Your Honor, that there's a ---- But Boyd never got to this stage, because in Boyd the question was whether there had to be a transcript given so that an examination could be made, right? But in order to get to that. Right. No, no, I understand that. But here we have the transcript, and there's no claim that there's been a prevention to make the argument or it's impossible for us to see what the reasons were, which was the claim in Boyd. Right. So here we have everything we need, and the question really is a very narrow one, which is, was the State trial court entitled to believe the reasons that the prosecutor gave in open court for having stricken these folks? Well, the ---- Go ahead. Go ahead. Well, I was also going to say that the district court also did the same thing that the court of appeal did, which was simply to say, well, this must be a credibility issue, even though the trial court didn't say that, and therefore we're not going to get to go past that. But if you ---- The problem, as I see it, and maybe this is what you're trying to say, is the trial court did not look at how other people were handled. And so when the ---- what the court of appeals did was say, well, this ---- they said they began by saying, well, we reviewed the comparative juror analysis and find nothing that undermines your earlier conclusion, but the reason they gave is because the trial court is in a position to assess whether the prosecutor's concern is genuine or a pretext. And so even though the Supreme Court has said in Miller L. that we should do this, in this case it's beside the point. So essentially, they relied on the district court's finding as essentially a fact-finding, even though the district court didn't consider certain things it was supposed to consider. Well, I can see I'm not making much headway on this point. However, here are ---- I meant you to be making headway with me, at least to the degree of demonstrating that there's a problem, that the court of appeals decision did not fill in the gap. No, it didn't. It basically just said, you know, basically the California courts have been resistant to the idea of comparative juror analysis. Okay? All right. So the next question is, let's look at the actual facts. Absolutely. Absolutely. All right? Yes. And not much that I will say ---- I will address that. Now, not much that I will say is not already addressed at the comparative juror analysis at ER 46 to 56, I think it is. But if you look at it one at a time, starting out with Juror McCutcheon. Oh, and let me also say that I do think that it is enough to raise suspicion that two of the three African-American jurors here, one of the reasons given by the prosecutor, and one which apparently, you know, is beyond anybody's ability to contest, is that I didn't like their attitude, I didn't get enough rapport with them, that kind of thing. And to me, that seems like the kind of thing that, number one, is impossible to answer, and number two, essentially deprives anybody of the power to do it. Well, insofar as demeanor, is this different than demeanor? I guess this is my question, because certainly the case law seems to admit a reliance on demeanor, and demeanor, to some degree, is reviewable, not necessarily in terms of voice and so on, but to some degree it is. But I'm not sure that's what she was saying. On Richardson, she was saying his demeanor, but, I mean, that's really the same thing, is basically I didn't get along with him, I didn't like the way he looked at me, I didn't have rapport. But, you know, again, that's her facial justification. You still have to go beyond that to determine whether it's pretextual. Why was his demeanor bad? Well, he chewed gum during the trial, during the voir dire, as did the prosecutor, which you would think would have given him some rapport. They did have something in common. There was questions about would you believe the victim's testimony, would you require different evidence to convict. But as you can see from the comparative juror analysis at ER 49 onwards, there were a large number, a large number of other jurors in that veneer who gave very similar, if not more concerning answers from the point of view of the prosecution. What this was was somebody who complained that the criminal justice system allows too many people to go free. You know, he was somebody that worked for the sheriff. Can I ask a background question? Yeah. We don't – are the actual questionnaires in the record? I believe that they are in the S. I could find some of them, but not others of them. Yeah. In the SERs, they are, I believe, yes. Okay. All of them? The people who weren't seated as well as the ones who were? I don't believe they're all there. Well, the reason I'm asking is because the ones that are – the ones that were challenged, I believe. One of the things that's said on the comparative analysis with regard to Richardson is that the main issue on which I gather the court of appeals mentioned was that he said that they're less believable because of age or personal background. And he said, did I say that? I must not have understood the question. She said he was being evasive. And this says, and I haven't been able to check it, that he wasn't saying that. He didn't say it with regard to teenagers. He said it with regard to victims of sexual assault. And is – but as far as I could tell, that questionnaire was not in the record I had. I thought it was because I know that I checked everything that was disputed in there. Okay. Well, I need to check it. But I can't say without looking at the – In any event, your position is he didn't say that. Yes. And also, I know I'm out of time. I just want to say that to the extent that I don't have time in rebuttal, the comparative juror analysis, which goes through each individual person, is in the E.R.s. starting at page 46. Thank you, counsel. We'll hear from Mr. Helfman. Good afternoon. The jury selection process in this case has been reviewed. Can you state your name for the record, please? I'm Stan Helfman from the California Attorney General's Office representing the appellee. Thank you. The jury selection process in this case has been reviewed numerous times at numerous levels and has passed muster each time. I'll begin by pointing out that at the time the Batson motion was made in the trial court in 2003, the matter in which the motion was handled in the trial court comported with California law. What difference does that make if California law was clearly – was violative and clearly established Supreme Court law at that time, as later determined? Well, in assessing what the trial court did, if you're going to do that, the trial court's action was not contrary to any clearly stated United States Supreme Court authority and, in fact, comported with California Supreme Court authority. Well, let's assume – let's assume that the comparative juror analysis had to be done by somebody, as Boyd held. And so who has done that in this case and where do we go with that? I will say this. In the prosecutor's extensive explanation for her challenges, she used some comparative juror analysis. She pointed to other jurors that she challenged for the same reason that she was challenging the jurors in question. But there were others that she didn't challenge. I mean, is the little analysis that they tried to introduce in the trial court, are you contesting its factual accuracy? Or are you contesting what it demonstrates? No. What I'm suggesting is that the judge was not refusing to engage in comparative jury analysis. The procedure in place at the time in California required the defense to put forth everything they had in their motion. The prosecutor then put forth everything she had in her explanation, and the judge then ruled. And that's the reason that you're putting yourself into a clearly – a violation  Well, the judge had the authority. Because they don't have – they essentially don't wait to hear the way you're explaining it. They didn't have to – they had to explain why the prosecutor's explanations were protectual before they heard them. Well, the California law at the time permitted a rebuttal argument but didn't require it. If the trial judge believed that the prosecutor's explanations were credible, the judge could but was not required to go forward. It's the same argument, right?  any record to show me that the prosecutor is a mentally sophisticated man. But why is it a proper conclusion that EPIT doesn't even apply at all here because they were doing the whole process in a way that violated clearly established Supreme Court law? Well the — the controlling authority came into effect between the time of the trial and the court of appeals. Batzen wasn't the controlling authority? Batzen was in place, but Miller L., which required a comparative jury analysis — But Johnson — didn't Johnson say that the whole California system was just wrong? Well, I don't — I don't know if that's — if that's the case. And I don't think Johnson addressed this particular question. The point I'm making is that the trial judge did not refuse to engage in comparative jury analysis. It was presented by the prosecutor, in part, in justifying her challenges. What happened in this case is there was no request for comparative jury analysis by the defense until the motion for new trial. Well, we don't know what they would have said because it wasn't allowed to stand up and say anything. He tried at the beginning. He tried to stand up and argue, and the judge flatly refused to hear him at all about anything once the prosecutor had given his reasons. We don't know that the defense was going to present comparative jury analysis at that point. Sure, because whenever — because we — he said it, he later said, represented on the motion for new trial that this is what I would have said. We don't know if that's true or not. That's right. But in any event, he never got to say anything. That's right. Well, he presented his comparative jury analysis after the trial was over, after the trial court ruled, and at a stage in the proceeding which was too late. Well, let me ask you it this way, because the California Court of Appeal largely says what you're now saying, but then in the alternative, it sort of says, we don't  appeal, because we've done it, and we're still satisfied. So I guess that's where I'd like you to turn your attention, because I read Boyd as saying all the rest of what you and the California Court of Appeal said is wrong. But where I think I'm wondering whether, you know, how much deference to give this, because it's the alternative, saying, okay, let's assume we have to do it, we've looked at it, and we've concluded this. Is that something to which we have to defer? Yes, I believe that that is correct, and I wasn't attempting to argue to the contrary. This Court's review takes a look at the decision of the State court, which means the Court of Appeal in this case, which went through the entire range of challenges to the jurors, and then pointed out that they don't need to decide whether the comparative jury analysis issue has to be preserved in the trial court by making the request at the time of the motion, because they're just going to go ahead and address it, and they did. And so that is the issue. If that is reasonably supported by the record, unless there's something in the record that completely undermines the Court of Appeal's review of that issue, this Court should give it deference. And that's what they said when they said that we reviewed the analysis. And then they didn't say we've done the comparative jury analysis, and they, in fact, don't. What they ultimately conclude is that there were reasons given, and only the trial court is in a position to assess whether the prosecutor's concern is genuine or merely a pretext for discrimination, and this can be done most reliably only during voir dire, and some, while we're mindful that the high court has indicated that the comparative jury analysis may in certain circumstances provide powerful evidence of discrimination, this is the more typical case where they enter, where they, after the fact, comparative jury analysis beside the point because of the legitimate subjective concerns that go into selecting a jury, citing Johnson, which was then overruled by the Supreme Court. So it seems to me what they really said about the comparative jury analysis is we're not going to do it. It doesn't matter. And they said they are going to do it. They said they don't have to spell it out in the opinion. They said the defendant, the issue is preserved, we're going to address it anyway, and they say that we're going to do it. And they do it. They don't they're not required to set it out step by step in the opinion, unless you find some reason to undermine the credibility of the Court of Appeal in making that statement. In fact, they do compare some of the jurors after saying they're going to do comparative jury analysis. They go ahead and point to some of the comparisons they've made. They do come to the conclusion that it provides very little help in this case, and that the trial judge is entitled to believe the credibility of the prosecutor. And I believe that that's true. The comparative jury analysis in this case provides very little help. You have a juror who is involved in a sexual harassment case.  But there's no other juror in a similar situation like that. And that's the point.    It's a different case. And the two seem to me to be seriously problematic. Roberts. Okay. You've got Richardson. All right. Now, Richardson was openly hostile to her in the courtroom, chewing gum, short with her, flip with her. There's no other juror that this record points to no other juror that maintained that position with her. For example, she said to, and I say I haven't been able to check this, but she said to him, why did you say X? And he said, I don't think I said X. Well, it turns out he didn't say X. So what's flip about that? She's just wrong. Well, she was in the courtroom listening to that. Right. And she was making. His demeanor. His demeanor. His demeanor plays a part in that. You're not able to see the tone, the position he was in in the chair, the tone he used when he was talking to her. He was being evasive because he said, I didn't say something which, in fact, he didn't say. How does that make him evasive? Well, there are a range of things that she was accusing him of saying. In fact, she pointed out that he said that in the questionnaire, he acknowledged that he is racist or have racist or ethnic bias. And in the courtroom, he said, oh, he must have misread the question. You know, there are for this is not the if she makes a mistake as to one question that doesn't undermine the range of points that she made about him, that the trial judge believed that the court of appeal believes and that are borne out by the record. This guy was openly chewing gum while she was questioning him. He admitted in the questionnaire that he was racist and then was evasive about it in the courtroom. What about the other juror, the final one, McCutcheon? Okay. As to that juror, which is McCutcheon, the prosecutor pointed out that she was concerned about this juror's ambivalence, about the amount of evidence that might be required of her to present in this sexual case. And on a number of occasions, McCutcheon made statements that backed up the prosecutor's concern. One of them is she felt that if a crime is more serious, the prosecutor's burden is to present more evidence. She felt that slight doubt was reasonable doubt. Now, it is true that at some point the judge explained that these were wrong. But the prosecutor is not obligated to accept the judge's explanation and the juror's reaction to that as the end of the issue. There are other potential jurors who might have a reasonable attitude about what reasonable doubt means. She's not obligated to take a juror that is ambivalent about her burden of proof. And then the prosecutor also pointed out not only did she feel a lack of rapport with this juror, but this juror had an obvious friendly rapport with the defense attorney and had a negative rapport with her. She's not obligated to accept a juror that has a negative attitude toward her. I think she even mentioned at some point this juror gave her the evil eye or a negative eye or something like that. That's enough. You know, she's not obligated to keep a juror who has a negative attitude toward her as a prosecutor. If we allow that explanation, which is to me different than a demeanor explanation, haven't we just thrown Batson out the window? Well, I don't think that that's true. That's an allegation that's made in the opening brief. But many courts have recognized that. I don't think that that's different from demeanor. I haven't seen any cases like that. How is that different from demeanor? Because demeanor can be explained in words. But I did not get a warm feeling from her. It's the subjective impression. I can't establish a relationship with her. She gave me a dirty look. Well, they gave her a dirty look. Maybe that's ascertainable. The rest of it is purely psychological and there's no way to go behind it, no way for anybody to go behind it. Well, in part, though, don't we rely on the trial judge who is actually observing the voir dire of the veneer in order to factor into the explanation offered by the prosecutor whether that's legitimate? A perfect example would be selecting a jury and you see somebody sitting in the courtroom who's just dressed very oddly and is staring out the window, doesn't seem to be paying attention. I mean, the trial judge might see that. It's probably never going to be reflected in the record. But that might raise a concern among a trial lawyer as to whether or not this is the type of a person who's going to pay attention. Yes, I agree with that, that the trial judge is in the best position to assess the credibility of the attorneys before him or her, in this case her. And how can somebody assess the credibility of the sentence? I didn't get a warm feeling from that. I think, you know, I think that if this Court were in a position to assess that issue and determine it independently, maybe you could go somewhere with that issue. I'm trying to say something else. I don't think the trial judge is in any position to – I don't think anybody is in any position to make a judgment about that. The controlling authorities recognize that a prosecutor can challenge a juror based on demeanor, and that the assessment – But I did not get a warm – how is it I did not get a warm feeling from her? I couldn't establish a rapport with her. She was cold toward me. She gave me a dirty look. I'd rather have someone else. That's not racist. What's wrong with that? I don't see it. They've shut me off. They're tired of me out there. You still have a minute. The controlling authorities recognize the use of demeanor by the attorneys for both sides in challenging jurors and recognize how difficult it is or impossible it is to review such a challenge on appeal and why it is so important then to recognize the significance of the trial judge's position and to assess the credibility of the attorneys making the challenges. But that doesn't make them racist, and it doesn't make them illegitimate. Unless there are questions from the Court, I'm willing to relinquish the rest of my time if there is any. Okay. You have a few seconds. You've relinquished. I'll make three very quick points, Your Honor. First, with respect to Ms. McCutcheon, not only did the trial judge explain to her what the proper standard was of proof and to convict, but she said after that that she would follow the law and the Court's instructions, and the comparative juror analysis shows 11 other jurors who gave similar or worse, from his point of view, answers. But you would agree, would you not, that when you're picking a jury, I mean, you listen to the answers, but you don't necessarily have to credit them? Well, Your Honor, in terms of the rapport, the warm-feeling business, the question is not whether that would, in the right circumstances, be the – a justification for striking a juror. The question is here, where she struck three African-American jurors, was it pretextual? And I disagree with my opponent who, when he says that the trial court conducted the proper analysis, at page ER-41, the trial court said, I appreciate the work that you did to get all of this analysis, meaning comparative juror analysis. The only thing, when you're dealing with the Wheeler-Batson situation, you're dealing with that particular juror. I'm not comparing that juror to every other juror who was dismissed or kept or whatever was going on in that situation. Well, that doesn't answer what the court of appeal did. The court of appeal did what Judge Berzin said, which was that, you know, they said, well, this really doesn't matter. It really doesn't tell us anything. And – You've exceeded your time, but you may sum up briefly, if you'd like. Oh. Sorry. I think we've used my time. I think we understand both parties' positions. They've been very well expressed and well briefed. The case just argued is submitted, and we are adjourned for this morning's hearing. All rise.
judges: Graber, Berzon, Tallman